UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZACHARIAS WEISHUHN,

                    Plaintiff,                 Civil Action No. 19-cv-13258

                                        Honorable Terrence G. Berg

v.                                   Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)**

      Plaintiff Zacharias Weishuhn ("Weishuhn") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties filed summary judgment motions (ECF Nos. 11, 13), and Weishuhn filed a reply (ECF No. 14). This Court held oral argument on October 8, 2020.[1]

**I.      RECOMMENDATION**

      For the reasons set forth below, this Court finds that the Administrative Law Judge's ("ALJ") conclusion that Weishuhn was not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment (**ECF No. 13**) be **DENIED**, Weishuhn's Motion for Summary Judgment (**ECF No. 11**) be **GRANTED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Recommendation.

---

[1] The case has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.      REPORT

### A.      Background

Weishuhn was 42 years old at the time of his alleged onset date of November 22, 2015,

and at 5'7" tall weighed approximately 175 pounds during the relevant time.  (Tr. 198-201).  He

completed high school and two years of college.  (Tr. 202).  He is a military veteran who previously

worked in the Michigan Air National Guard and as a police officer for the City of Detroit.  (*Id*.).

Weishuhn's alleged disabling conditions include antiphospholipid syndrome[2] with Factor V

Leiden[3], chronic occlusive deep vein thrombosis ("DVT"), and post-traumatic stress disorder

("PTSD").  (Tr. 201).

Weishuhn's date last insured was December 31, 2015.  He applied for benefits on January

31, 2018, but that application was denied.  (Tr. 82).  ALJ David Mason, Jr. held an administrative

hearing on February 28, 2019.  (Tr. 35-76).  Weishuhn, who was represented by attorney Mandy

Kelly, testified at the hearing, as did Vocational Expert Stacey Lambert ("VE").  (*Id.*).  On June

19, 2019, ALJ Mason issued a written decision finding Weishuhn not disabled under the Act.  (Tr.

12-30).  On September 12, 2019, the Appeals Council denied review.  (Tr. 1-5).  Weishuhn timely

filed for judicial review of the final decision on November 5, 2019.  (ECF No. 1.)

The Court has thoroughly reviewed the transcript, including Weishuhn's medical record,

Function and Disability Reports, and testimony as to his conditions and resulting limitations.

Instead of summarizing that information here, the Court will make references and provide citations

to the transcript as necessary in its discussion of the parties' arguments.

---

[2] Antiphospholipid syndrome (APS) is a rare autoimmune disorder characterized by recurring blood clots (thrombosis). *See* www.rarediseases.org.

[3] Factor V Leiden means the APS is a genetic problem that cannot be cured. *See* www.webmd.com.

B.      **The ALJ's application of the disability framework analysis**

Under the Act, disability benefits are available only for those who have a "disability." *See*

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).   The Act defines "disability" as the

"inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).   The Commissioner's regulations provide that a disability is to be determined

through the application of the following five-step sequential analysis:

> Step One:   If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:    If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or mental
> ability to do basic work activities," benefits are denied without further
> analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity,
> has a severe impairment that is expected to last for at least twelve months,
> and the severe impairment meets or equals one of the impairments listed in
> the regulations, the claimant is conclusively presumed to be disabled
> regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work,
> benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant
> work, if other work exists in the national economy that the claimant can
> perform, in view of his or her age, education, and work experience, benefits
> are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6,

2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534

(6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps …. If the

analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers

to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir.

1994).

Following this five-step sequential analysis, ALJ Mason found that Weishuhn was not

disabled under the Act.  (Tr. 30).  At step one, the ALJ found that Weishuhn had not engaged in

substantial gainful activity since November 22, 2015.  (Tr. 17).  At step two, the ALJ found that

Weishuhn had the following severe impairments: "antiphospholipid; posttraumatic stress disorder

(PTSD); deep vein thrombosis (DVT) of the lower extremities; major depressive disorder; and

panic disorder."  (Tr. 18).  At step three, the ALJ found that Weishuhn's impairments, whether

considered alone or in combination, did not meet or medically equal a listed impairment.  (Tr. 20).

The ALJ then assessed Weishuhn's residual functional capacity concluding that he was

capable of performing sedentary work, with the following additional limitations:

> [H]e could sit six hours of an eight-hour day for half hour at a time; and
> stand/walk for two hours of an eight-hour workday for ten minutes at a time,
> and could alternate between sitting and standing two times per hour.  He
> needed to alternate one foot at a time in the elevation of his feet while sitting,
> up to twelve inches.  He could occasionally climb ramps or stairs (with hand
> rail).  He could never use ladders, ropes, or scaffolds.  He could occasionally
> balance, stoop, kneel, crouch, and crawl.  He could frequently handle,
> finger, and feel with the right dominant hand.  He could never use foot
> controls bilaterally.  He was limited to simple, routine, repetitive tasks (less
> than constant), in a work environment free of fast pace production
> requirements, involving only simple work related decisions with few, if any,
> work place changes.  He needed to avoid workplace hazards including
> unprotected heights and operational control of dangerous or moving
> machinery.  He was limited to jobs involving only occasional contact with
> coworkers, supervisors, and the general public; moderate noise levels such
> as light industrial to office setting levels; and no work around or use of sharp
> objects like knives, razors, and sharp tools.  He was further limited to jobs
> that would have allowed him to be off task eight percent of the workday.

(Tr. 21).

At step five, the ALJ determined that Weishuhn could perform a significant number of jobs

in the national economy.  (Tr. 29).  ALJ Mason found, based in part on testimony provided by the

4

Vocational Expert in response to a hypothetical question, that Weishuhn could perform the occupations of document preparer (60,000 jobs nationally), final assembler (25,000 jobs nationally) and table worker (11,000 jobs nationally). (Tr. 29). As a result, ALJ Mason concluded that Weishuhn was not disabled under the Act. (Tr. 30).

### C.      Standard of review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*,

167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

### D.    Analysis

Weishuhn argues that ALJ Mason's step five assessment is not supported by substantial evidence. (*Id*. at PageID.933.)[4] Most of Weishuhn's step five argument asks the Court to consider whether, in light of particular medical records, testimony, and other specified evidence, the RFC adopted by the ALJ is supported by substantial evidence. (ECF No. 11, PageID.933-38.) That dovetails with another of Weishuhn's arguments that will be the focus of this Court's analysis – that the ALJ erred at the end of his step five analysis when he incorrectly wrote that Weishuhn (1) worked after his alleged onset date, and (2) earned income at a "substantial gainful activity" for periods of time beyond his date last insured. (*Id.*, PageID.935.) The Court concurs with Weishuhn that these errors warrant remand.

At the hearing before the ALJ, Weishuhn clearly testified that the last day he worked was November 22, 2015, and that the income he received thereafter from the City of Detroit Police Department was "disability pay":

> Q:    And when did you last work?
> A:    November 22, 2015.

---

[4] Weishuhn also argues that the ALJ erred at step three by failing to analyze Listing 12.15 – "Trauma – and Stressor-Related Disorders" – when evaluating his PTSD. (*Id*. at PageID.938.) Because the Court is recommending remand on other grounds, it declines to address this argument. On remand, however, the ALJ should specifically consider whether Weishuhn meets or medically equals Listing 12.15.

Q:     Now, the arrangement – you continued to receive full pay from the
       Detroit Police Department.  Is that correct?
A:     Yes, sir.

Q:     Can you explain that.
A:     The Detroit Police Department has a medical section.  And they
       determine what your status is, whether you're full duty or you're off.
       There is no intermediate, they got rid of that, like a light duty, desk
       duty, and stuff like that.  They got – just went away.  So, I would go
       to the medical section every 20, 30 days, whenever they told me to
       come back.  And they would say come back another 30 days.

Q:     Okay.  And –
A:     Approximately 30 days.

Q:     That's fine.  Okay.  So, while it wasn't term – short-term disability,
       that is, in effect, how it operated, as disability pay, even though it
       was full pay?
A:     Yes, sir.

Q:     You performed – well, in other words, you perform no service for
       the pay.  Is that correct?
A:     Correct.

Q:     You performed no work?  All right.
A:     No, sir.

(Tr. 42-43.)

The documentary evidence in the record corroborates Weishuhn's testimony.  (Tr. 187-

97).  Yet, despite this unequivocal evidence, at the end of the ALJ's decision, he wrote:

> Additionally, the claimant has **worked since the alleged onset date**
> [November 22, 2015] through **November 2017** and **earned substantial
> gainful activity through the fourth quarter of 2017** [], and was eventually
> approved for non-duty related disability retirement (Ex 1F/2).  At the
> hearing, he explained that while he continued to work, he was not able to
> perform full duty.  He took naps in the daytime in the squad car daily for
> about one and a half hours while his partner covered for him, and took extra
> breaks as needed.

(Tr. 28) (emphasis added).

7

Although the ALJ had earlier in his decision provided contradictory statements that more accurately stated the facts (*e.g.*, Tr. 17), the above-quoted paragraph is so flatly incorrect, and written with such a level of intentionality, that the reader can have no confidence that the ALJ's mistakes did not impact his ultimate decision.  First, the time elements in this case are important because Weishuhn's alleged onset date and date last insured are very close in time.  Any significant work activity performed by him subsequent to his alleged onset date could easily doom his claim. Second, this is not a case where the offending language can be chalked up to a "slip of the pen." This wasn't the mistaken addition of the word "not" that turned what was intended to be a clear negative into a double-negative, or some other minor slip-up that changed the meaning of a sentence in a way that facially made little sense.

On the contrary, the above-quoted passage uses terms of art that have important and specific meanings in the Social Security setting, and appears intentional.[5]  The ALJ began the passage with the word "Additionally".  (Tr. 28.)  Because this immediately followed a series of findings by the ALJ that he relied on to determine Weishuhn not disabled, the ALJ appears to have had in mind that the information he was about to provide *further* supported denying Weishuhn's application for benefits.  To that end, the ALJ wrote that Weishuhn "worked since the alleged onset date through November 2017 . . ."  (*Id.*)  But in reality, it is undisputed that Weishuhn performed no work after his alleged onset date of November 22, 2015.  The significance of that error is amplified by the fact that a few lines later, the ALJ wrote, "while [Weishuhn] *continued to work*, he was not able to perform full duty."  (*Id.*) (emphasis added.)  It is thus unclear what the ALJ understood with respect to Weishuhn's efforts to make it through the work day *while he was*

---

[5] To be clear, the Court is not suggesting any sort of mal-intent by the ALJ, but rather that it appears from the context that the ALJ meant (albeit mistakenly) to include the sentences in question exactly as he wrote them.

*actually working*, and what the ALJ believed to be the case during the subsequent period of time

that Weishuhn claimed to be disabled.   Finally, the ALJ's statement that Weishuhn "earned

substantial gainful activity through the fourth quarter of 2017 [], and was eventually approved for

non-duty related disability retirement" is also troubling.  "Substantial gainful activity" is a critical

term of art in the Social Security setting.  It is defined in the regulations as meaning, "work that -

(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or

intended) for pay or profit."  20 C.F.R. § 416.910.  Because that term clearly does not apply to a

claimant's receipt of disability income,[6] the ALJ's use of it here (particularly in conjunction with

the other erroneous statements discussed above) suggests that he mistakenly had in his mind that

Weishuhn was actually working during the relevant period following his alleged onset date.

   In sum, the ALJ clearly erred by including the above-quoted passage in his decision.  And,

for the reasons explained above, even recognizing that the ALJ's decision was reasonably thorough

in other respects, the Court simply cannot reconcile the error against the balance of the decision or

find that it is harmless.[7]  Accordingly, the Court cannot find that the ALJ's decision is supported

---

[6] Indeed, if anything, a claimant's receipt of disability pay would seem to support, or at least be consistent with, his claim for Social Security disability benefits.  On remand, the ALJ should consider this issue.

[7] Weishuhn raises a number of other issues in support of his request for remand, mostly about the RFC adopted by the ALJ.  In particular, he focuses on the ALJ's finding that imaging studies of his left leg were "negative for venous thrombus" and that Weishuhn reported obtaining "relief" from pressure stockings.  (Tr. 23-24.)  As a result, the ALJ limited Weishuhn to elevating his feet 12 inches, as opposed to the waist-level restriction that Weishuhn claims was necessary.  Because the Court is recommending remand for the reasons stated above, it declines to consider these issues in detail.  However, it is worth noting that although an August 2016 treatment note does reference Weishuhn "using compression stockings with relief" (Tr. 573), numerous other records suggest that his legs gave him ongoing problems.  (*See e.g.*, Tr. 452 ("He is complaining of RLE pain and swelling.  States it is worse at night, no alleviating factors. . . . unable to work due to RLE pain."); 489 ("I am hav[ing] quite a bit of problems with my legs."); 524 ("Assessment and Plan: Chronic DVT: Patient had undergone doppler studies about six months ago and was noted to have residual clot."); 527 ("Also my legs have been giving me trouble with my dvt problem."); 538 ("leg

by substantial evidence, and remand is warranted.

## III. CONCLUSION

For the reasons set forth above, this Court finds that the Administrative Law Judge's

conclusion that Weishuhn was not disabled under the Act is not supported by substantial evidence.

Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment

(**ECF No. 13**) be **DENIED**, Weishuhn's Motion for Summary Judgment (**ECF No. 11**) be

**GRANTED** and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED**

to the ALJ for further proceedings consistent with this Recommendation.

Dated: November 12, 2020                    s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                             United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and

Order, any party may serve and file specific written objections to the proposed findings and

recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P.

72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any

---

discomfort due to DVT"); 544; 343-44 ("leg discomfort due to DVT", "legs will bother him" as pertains to sleep difficulties); 527 ("admits to leg pain due to DVT"). On remand, the ALJ should fully weigh the competing evidence in terms of how it bears on whatever RFC is ultimately adopted. The Court also notes that the ALJ found that although Weishuhn allegedly experienced "side effects from the use of medications including [] poor sleep [], those side effects are mild and would not have interfered with [his] ability to perform work activities in any significant manner, **as he reported resolution of his sleep problems with Ambien**." (Tr. 28) (emphasis added). In reality, however, at an appointment regarding his significant sleep issues, Weishuhn reported that Ambien was ineffective, and he testified to having ongoing sleep issues and needing to take daily naps as a result. (Tr. 60, 65-66, 342-44, 421-22). On remand, the ALJ should fully consider Weishuhn's sleep issues in conjunction with his severe post-traumatic stress disorder impairment (*see e.g.*, Tr. 347), and their impact on his RFC.

10

further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431

F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will

be preserved for the Court's appellate review; raising some objections but not others will not

preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829

F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir.

2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR

72.1(d)(2).

     A party may respond to another party's objections within 14 days after being served with

a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise,

and should address specifically, and in the same order raised, each issue presented in the

objections.

**<u>CERTIFICATE OF SERVICE</u>**

     The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on November 12, 2020.

                    s/Eddrey O. Butts
                    EDDREY O. BUTTS
                    Case Manager